1

2

3

4

5

6

7

8

## UNITED STATES DISTRICT COURT

9

## EASTERN DISTRICT OF CALIFORNIA

10

11

MELODY HOLLAND-JOHNSON,

**Case No. 1:14-cv-00913-EPG**

12

Plaintiff,

**ORDER REGARDING PLAINTIFF'S
SOCIAL SECURITY COMPLAINT**

13

v.

14

CAROLYN W. COLVIN, Acting
Commissioner of Social Security

15

Defendant.

16

17

**I.    INTRODUCTION**

18

Plaintiff Melody Holland-Johnson ("Plaintiff") seeks judicial review of a final decision by

19

the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application

20

for supplemental security income benefits pursuant to Title XVI of the Social Security Act.  The

21

matter is currently before the Court on the parties' briefs, which were submitted without oral

22

argument to the Honorable Erica P. Grosjean, United States Magistrate Judge.[1]

23

**II.    BACKGROUND AND PRIOR PROCEEDINGS[2]**

24

Plaintiff was 44 years old at the time her application for benefits was filed.  AR 37.  She

25

has completed high school and received an associate's degree in office technology.  AR 38.

26

Plaintiff most recently worked as a desk clerk at a motel in 2007.[3]  AR 40, 180.  Plaintiff has one

27

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. (ECF Nos. 7, 8, 10.)

28

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

[3] Plaintiff testified that she worked as a motel clerk from 2004 to 2007, but elsewhere in the record she indicates that

adult daughter.  AR 37.

Plaintiff's alleged physical conditions are degenerative disc disease, fibromyalgia, high blood pressure, and stomach problems. AR 179.  On August 19, 2011, Plaintiff filed an application for supplemental security income benefits under Title XVI alleging a disability beginning on April 1, 2008.  AR 159-165.  This application was denied initially on January 9, 2012 and on reconsideration on July 16, 2012.  AR 95-99, 102-105.  Plaintiff filed a request for a hearing on September 13, 2012.  AR 108-110.  The hearing was then conducted before Administrative Law Judge Danny Pittman (the "ALJ") on September 17, 2013.  AR 33.  On October 11, 2013, the ALJ issued an unfavorable decision determining that Plaintiff was not disabled.  AR 16-28.  Plaintiff filed an appeal of this decision with the Appeals Council.  AR 11-12.  The Appeals Council denied her appeal, rendering the order the final decision of the Commissioner. AR 1-3.

Plaintiff now challenges that decision, arguing that: (1) The ALJ erroneously found the third party statement of Misty Rae Johnson, Plaintiff's daughter, not credible; and (2) the ALJ failed to provide specific and legitimate reasons to reject the opinion of Jerome Rothbaum, M.D., when he declined to adopt all of Dr. Rothbaum's proposed limitations into the Plaintiff's residual functional capacity.

Defendant contests Plaintiff's assessment, pointing out that: (1) The inconsistencies in Johnson's report were substantial and justified discrediting her statement; and (2) Dr. Rothbaum's opinion was not supported by the evidence in the record, so the ALJ's rejection of his opinion was well-founded.  Defendant also points out that, even if Johnson's third-party statement was incorrectly disregarded, the resulting error would be harmless.

## III.    THE DISABILITY DETERMINATION PROCESS

To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A).  An individual shall be considered to have a

---

she held this job from 2007 to 2008.

2

disability only if:

> . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability.  20 C.F.R. § 416.920(a)-(f).  The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled.  20 C.F.R. § 416.920(a)(4).  The ALJ must consider objective medical evidence and opinion testimony.  20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine:  (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically-determinable "severe" impairments,[4] (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform his past relevant work,[5] and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the regional and national level.  20 C.F.R. § 416.920(a)-(f).

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard.  AR 8.  In particular, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 27, 2011, the date specified in her application. AR 18.  Further, the ALJ identified degenerative disc disease status post discectomy with residual radiculopathy, hypertension, diabetes mellitus, fibromyalgia, and a history of seizure disorder as medically determinable impairments.  AR 18.  Nonetheless, the ALJ

---

[4] "Severe" simply means that the impairment significantly limits the claimant's physical or mental ability to do basic work activities.  *See* 20 C.F.R. § 416.920(c).
[5] Residual functional capacity captures what a claimant "can still do despite [his or her] limitations." 20 C.F.R. § 416.945. "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n. 2 (9th Cir. 2007).

3

determined at step two of the five-step process that Plaintiff did not have an impairment or combination of impairments that meets or equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  AR 20.

Based on a review of the entire record, the ALJ thus determined that Plaintiff had the RFC to "occasionally lift and/or carry 20 pounds occasionally [sic] and 10 pounds frequently; stand and/or walk for 6 hours in an 8-hour workday with normal breaks; and sit about 6 hours in an 8-hour workday with normal breaks.  She can frequently balance and stoop; occasionally kneel, crouch, crawl, and climb ramps and stairs; but never climb ladders, ropes, or scaffolds.  She can frequent[ly] reach overhead.  She must avoid concentrated exposure to hazards and extreme cold."  AR 20-21.  Based on this RFC, the ALJ found that Plaintiff could perform jobs that exist in significant numbers in the national economy, including cashier, sales attendant, or marker.  AR 27.

## IV.   STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether:  (1) it is supported by substantial evidence; and (2) it applies the correct legal standards. *See Carmickle v. Commissioner*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007).

"Substantial evidence means more than a scintilla but less than a preponderance." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  It is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion."  *Id.*  "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."  *Id*.

## V.   DISCUSSION

### A.  The Relevant Medical Evidence

Plaintiff argues that the ALJ improperly considered the medical evidence, as well as a third party statement, and thus erroneously determined that Plaintiff was not disabled. Specifically at issue is the ALJ's consideration of:  (1) the opinion of Jerome Rothbaum, M.D., a consulting examiner; and (2) the third party statement of Misty Rae Johnson, Plaintiff's daughter.

The following review of the medical record is limited the issues raised by Dr. Rothbaum's opinion and the third party statement.

### i.  Gerald Muthu, M.D.

Dr. Muthu treated Plaintiff between July 22, 2011 and February 29, 2012.  AR 310.  On July 22, 2011, Plaintiff complained to Dr. Muthu of back pain and fibromyalgia.  AR 268.  She reported fatigue and back pain, as well as muscle pain.  Dr. Muthu prescribed, among other things, physical therapy.  AR 269.  On December 7, 2011, Plaintiff reported to Dr. Muthu that she was exercising regularly (at least four times per week).  AR 312.  Dr. Muthu observed that she had no "deformity or tenderness" in her back and walked with a "[n]ormal gait and station."  AR 313.  She also had normal range of motion and no "instability, atrophy, or abnormal strength or tone in the head, neck, spine, ribs, pelvis or extremities."  AR 313.  He discussed healthy eating habits with Plaintiff and recommended regular "weight lifting or other resistance exercise."  AR 315.

### ii.  Robert Lundell, D.O.

Dr. Lundell treated Plaintiff as part of her treatment at Sun Life Family Health Center, which treated Plaintiff between July 29, 2011 and October 17, 2012.  AR 375-400.  On February 21, 2012, Plaintiff complained to Dr. Lundell of fibromyalgia pain.  AR 389.  She explained that she was "trying to get on disability" because she was experiencing back pain.  AR 389.  Her lumbosacral spine was tender and she expressed some pain.  AR 390.  Despite this, her "[g]ait and stance were normal."  AR 391.  Dr. Lundell recommended Plaintiff try physical therapy, but she declined because she lacked insurance.  AR 391.

On April 16, 2012, Plaintiff was treated by Bessie Burk, a nurse practitioner at Sun Life Family Health Center.  AR 383.  Burk observed that Plaintiff had full range of motion in her extremities, rated her strength at 5/5, and a normal gait and station.  AR 384-385.

### iii.  Jerome Rothbaum, M.D.

Dr. Rothbaum conducted a consulting examination of Plaintiff on December 13, 2011.  She reported low back pain, fibromyalgia, and carpal tunnel syndrome.  AR 284.  She explained that she had suffered from back pain since 1994, when she had back surgery, but had not seen a

back doctor for many years.  AR 284.  She participated in physical therapy and had chiropractic care in the past, but did not find them helpful.  AR 284.  She described her pain as 9 or 10 out of 10.  AR 284.  She reported that she spent most of her time watching movies or reading while lying on the couch, although she was able to drive and was personally self-sufficient.  AR 285. Plaintiff showed decreased sensation to pinpricks in the left lateral thigh, calf, and foot.  AR 286. Dr. Rothbaum observed that Plaintiff dressed and undressed normally, walked normally, and was able to get up and down from the examining table normally.  AR 286.  Dr. Rothbaum concluded that Plaintiff had degenerative disc disease of the lumbar spine, status post lumbar discectomy with residual sensory radiculopathy, fibromyalgia, and carpal tunnel syndrome.  AR 287.

Dr. Rothbaum determined that, based on these conditions, Plaintiff could lift and/or carry up to 20 pounds occasionally and 10 pounds frequently; stand and/or walk for 2-6 hours in an eight hour workday; and sit for 4-5 hours in an eight hour workday (but would need to shift positions hourly).  AR 289.  She could occasionally:  climb ramps and stairs; stoop; kneel; crouch; or crawl.  AR 289.  She could never:  climb ladders, ropes, or scaffolds.  AR 289.  She should be precluded from working around heights or moving machinery.  AR 290.  The ALJ accorded Dr. Rothbaum's opinion some weight.  AR 23.

### iv.   Richard Palmer, M.D.

Dr. Palmer performed a consulting examination on Plaintiff on July 8, 2012.  AR 319. Plaintiff complained to Dr. Palmer of pain in her neck, shoulders, back, and ankles.  AR 319.  She informed Dr. Palmer that her pain was exacerbated by extended periods of sitting, standing, walking, lifting, carrying, and performing certain back movements.  AR 319.  She also complained of occasional seizures.  AR 320.  Plaintiff told Dr. Palmer that she could sit for 20 minutes in an hour, stand for 10 minutes in an hour, and walk for 20 minutes in an hour.  AR 320. Dr. Palmer noted that her walking appeared normal, although she had "[m]ild unsteadiness favoring the right lower extremity" in toe walking.  AR 320.  She also complained of lower back pain.  AR 320.  Dr. Palmer concluded that Plaintiff had fibromyalgia, status post L4-5 lumbar discectomy, irritable bowel syndrome, and localized seizures.  AR 322.

Based on these conditions, Dr. Palmer concluded that Plaintiff could lift and/or carry 20

pounds occasionally and 10 pounds frequently; stand and/or walk for 6-8 hours in an 8 hour workday; and sit for 6-8 hours in an 8 hour workday.  AR 323.  She could frequently:  stoop or reach.  AR 323.  She could occasionally:  climb ramps and stairs; kneel; crouch; and crawl.  AR 323.  She could never:  climb ladders, ropes, or scaffolds.  AR 323.  She could not work around heights, moving machinery, or extreme temperatures.  AR 324.   The ALJ gave Dr. Palmer's opinion significant weight.  AR 23.

### v.  Andrew Przybyla, M.D. and Martha Goodrich, M.D.

Dr. Przybyla, a reviewing physician, reviewed Plaintiff's records on January 3, 2012.  AR 300.  Based on Plaintiff's history of dizziness, Dr. Przybyla recommended that Plaintiff be restricted from climbing ladders, ramps, and stairs.  AR 300.  She should also be required to avoid heights and hazards.  AR 300.

Dr. Goodrich, another reviewing physician, reviewed Plaintiff's records on July 16, 2012.  AR 91.  She found that Plaintiff could lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk for 6 hours in an 8 hour workday; and sit for 6 hours in an 8 hour workday.  AR 89.  She could frequently:  balance, stoop, and reach overhead.  AR 89, 90.  She could occasionally:  climb ramps and stairs; kneel; crouch; and crawl.  AR 89.  She could never climb ladders, ropes, or scaffolds.  AR 89.  She should avoid exposure to extreme cold and hazards.  AR 90.

The ALJ gave both Dr. Goodrich's opinion and Dr. Przybyla's opinion significant weight.  AR 24.

### B.  The ALJ's Treatment of Dr. Rothbaum's Opinion was Appropriate

Plaintiff contends that the ALJ failed to provide sufficient reasons for rejecting Dr. Rothbaum's opinion with respect to Plaintiff's walking, sitting, and standing limitations.  In particular, Plaintiff argues that the ALJ rejected Dr. Rothbaum's findings only by ignoring Plaintiff's fibromyalgia and focusing solely on her degenerative disc disease diagnosis.  Plaintiff also argues that the ALJ did not provide specific and legitimate reasons for the rejection of Dr. Rothbaum's opinion beyond the fact that Dr. Rothbaum's opinion was contradicted by Dr. Palmer's opinion.

*i. Legal standards*

The weight given to medical opinions depends in part on whether they are offered by treating, examining, or non-examining (reviewing) professionals. *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. *Id.*; *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996).

An ALJ may reject an *uncontradicted* opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a *contradicted* opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons. *Lester*, 81 F.3d at 830. While a treating professional's opinion is generally accorded superior weight, if it is contradicted by an examining professional's opinion (when supported by different independent clinical findings), the ALJ may resolve the conflict. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir.1995), *citing Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989). The regulations require the ALJ to weigh the contradicted treating physician opinion, *Edlund v. Massanari*, 253 F.3d 1152 (9th Cir. 2001), except that the ALJ need not give it any weight if it is conclusory and supported by minimal clinical findings. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); *see also Magallanes*, 881 F.2d at 751.

The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a non-examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir. 1984). As is the case with the opinion of a treating physician, the Commissioner must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. And like the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).

The opinion of a non-examining physician may constitute substantial evidence when it is

"consistent with independent clinical findings or other evidence in the record."  *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).  Such independent reasons may include laboratory test results or contrary reports from examining physicians, and plaintiff's testimony when it conflicts with the treating physician's opinion.  *Lester*, 81 F.3d at 831, *citing Magallanes*, 881 F.2d at 751–55.

### ii.  Analysis

Dr. Rothbaum's ultimate findings regarding the extent of Plaintiff's limitations are contradicted by the findings of Drs. Palmer, Przybyla, and Goodrich.[6]  Consequently, the ALJ needed only provide specific and legitimate reasons supported by substantial evidence to reject any of Dr. Rothbaum's findings.  *Lester*, 81 F.3d at 830-31.

In his decision, the ALJ explained of Dr. Rothbaum's opinion:

> I give the findings and opinions of Dr. Rothbaum some weight. The lifting and carrying limits appear consistent with the claimant's history of back surgery, her residual sensory deficits, and her history [of] fibromyalgia. However, given Dr. Rothbaum observed the claimant to walk normally, [and] had only mild lumbar tenderness, I find the sitting, standing and walking limitations he opined are too restrictive. The treating source records consistently showed the claimant had a normal gait and stance. Straight leg testing was normal and the claimant declined physical therapy. I note the most recent consultative examination by Dr. Palmer finding greater functional capacity. The State agency doctors found the claimant had restrictions in overhead reaching, and the claimant testified it was painful to brush her hair. These factors, taken as a whole, support somewhat different limitations than opined by Dr. Rothbaum.

AR 23.

The ALJ thus gave Dr. Rothbaum's opinion reduced weight because: (1) the opinion was inconsistent with his own observations and tests; (2) the opinion was unsupported by other evidence in the record; and (3) a more recent consulting examination by Dr. Palmer found fewer limitations.

Contrary to Plaintiff's assertion, the ALJ does appear to have considered her fibromyalgia in discussing Dr. Rothbaum's findings and even incorporates the limitations imposed by the fibromyalgia in adopting portions of Dr. Rothbaum's findings.  Plaintiff argues that the ALJ used "degenerative disc disease tests to ignore the fibromyalgia evidence in an effort to justify

---

[6] As the ALJ notes, Drs. Muthu and Sather, Plaintiff's treating physicians, also never "opined that the claimant had any physical or mental functional limitations."  AR 22.

rejecting the walk, stand and sit limitation." (Plaintiff's Reply Brief 3:2-5, ECF No. 24.)  In other words, the tests that were performed by Dr. Rothbaum (and that were relied on by the ALJ in rejecting Dr. Rothbaum's opinion) were tests that were designed to test only degenerative disc disease and would not have included fibromyalgia symptoms.

As an initial matter, the ALJ does not appear to have relied solely on these tests (among others, lumbar palpation and the straight leg test) in rejecting Dr. Rothbaum's opinion.  Rather, the ALJ explained that Dr. Rothbaum's observations (*e.g.*, that Plaintiff appeared to walk normally) contradicted his conclusion that Plaintiff should be limited in sitting, standing, and walking during the workday.  AR 23.  These observations mirror those by Plaintiff's treating clinicians, a fact that the ALJ also pointed out.  AR 23 ("The treating source records consistently showed the claimant had a normal gait and stance"); AR 313, 384-385, 391.  A physician's opinion can be rejected by an ALJ where that opinion is not supported by the physician's own observations.  *Tomasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (upholding rejection of physician's opinion where "ultimate conclusions . . . did not mesh with her objective data or history"); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (physician's finding of "marked limitations" legitimately rejected where "no substantial evidence existed demonstrating [plaintiff's] mental impairments prevented him from working").  The ALJ's rejection of this portion of Dr. Rothbaum's opinion based on contradictory physician observations was thus specific, legitimate, and supported by substantial evidence.

Even if the ALJ were incorrect to reject Dr. Rothbaum's conclusion of sitting, standing, and walking limitations based on Dr. Rothbaum's consulting examination of Plaintiff, the ALJ was within his authority to reject Dr. Rothbaum's conclusions in favor of the more recent consulting examination by Dr. Palmer because it was more consistent with the evidence in the record.  20 C.F.R. § 416.927(c)(4) ("the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion"); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (examining physician's opinion "alone constitutes substantial evidence" to reject treating physician's opinion where it "rests on his own independent examination"); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) ("The ALJ is responsible for determining credibility

and resolving conflicts in medical testimony").  Here, the ALJ acted correctly in resolving a minor inconsistency between two examining physicians by choosing to favor the physician whose opinion was better supported by the other physician opinions in the record.  The ALJ did not commit any error in doing so.

### C. The ALJ's Evaluation of Third Party Credibility was Appropriate

Plaintiff objects to the ALJ's treatment of a third party statement written by Misty Rae Johnson, Plaintiff's daughter.  Specifically, Plaintiff claims that the ALJ erroneously rejected Johnson's statements based on inferences that did not flow from the evidence in the record.

#### i.  Legal standards

Lay witness testimony as to a claimant's symptoms is competent evidence that the Commissioner must take into account.  *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).  The ALJ may reject such testimony if she does so expressly by providing "reasons that are germane to each witness." *Dodrill*, 12 F.3d at 919.  An ALJ need not reconsider each witness individually; "[i]f the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012), *citing Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009).  In other words, if the ALJ rejects a Plaintiff's own statements for valid reasons and the third party statement makes similar allegations, the ALJ has provided "germane reasons" for rejecting a third party statement.  *Valentine*, 574 F.3d at 694 ("In light of our conclusion that the ALJ provided clear and convincing reasons for rejecting Valentine's own subjective complaints, and because Ms. Valentine's testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting her testimony").  Alternatively, an ALJ can disregard a third party statement that "conflicts with medical evidence." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).  To reject lay testimony, "the ALJ need not cite to the specific record as long as 'arguably germane reasons' for dismissing the testimony are noted." *Caldwell v. Astrue*, 804 F.Supp.2d 1098, 1104 (D. Or. 2011).

#### ii.  Analysis

Here, the ALJ gave the statements provided by Johnson "varied weight" because

1    Johnson's conclusion—that Plaintiff could only walk a "couple 100 yards"—was inconsistent

2    with her statement that she and Plaintiff would shop together and Plaintiff's statement that she

3    would go out to eat.  AR 25; 211.  Like Johnson, Plaintiff claimed in her own statement that she

4    was only capable of walking "a few hundred yards."  AR 203.  The ALJ similarly found Plaintiff

5    not credible, saying that her "range of activities was inconsistent with total disability."  AR 26.

6    Plaintiff does not challenge the ALJ's findings with respect to Plaintiff's credibility.  Because the

7    statements made by Johnson and Plaintiff are substantially similar (*i.e.*, that Plaintiff was only

8    capable of walking a few hundred yards) and the ALJ correctly rejected Plaintiff's statement, the

9    ALJ provided germane reasons for disregarding Johnson's statement.  *Valentine*, 574 F.3d at 693

10   (evidence that plaintiff "exercised and undertook several projects after he retired" suggested that

11   his "later claims about the severity of his limitations were exaggerated," providing clear and

12   convincing reasons for rejecting Plaintiff's testimony); *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir.

13   2001) ("inconsistent testimony about Lewis's sleep habits . . . [provided] arguably germane

14   reasons for dismissing the family members' testimony").

15          As Defendant notes, even if the ALJ erred in evaluating Johnson's statement, however,

16   the error would be harmless.  As noted above, the portions of Johnson's statements rejected by

17   the ALJ are mirrored in Plaintiff's own statements.  Thus, even a "failure to discuss" Johnson's

18   statements would not be prejudicial.  *Molina*, 674 F.3d at 1117 ("Where lay witness testimony

19   does not describe any limitations not already described by the claimant, and the ALJ's well-

20   supported reasons for rejecting the claimant's testimony apply equally well to the lay witness

21   testimony, it would be inconsistent with our prior harmless error precedent to deem the ALJ's

22   failure to discuss the lay witness testimony to be prejudicial per se").

23          Plaintiff contends that this case is distinguishable from *Molina* because the ALJ in *Molina*

24   did not attempt to provide *any* reason to reject the third party statements.  In contrast, the ALJ in

25   this case has provided *some* reasons for the rejection of Johnson's statement.  But this argument

26   misses the point:  *Molina* holds that even if an ALJ wholly neglects to provide any reason to

27   reject third party testimony—and that third party testimony aligns with properly rejected claimant

28   testimony—no harmful error results.  *Molina*, 674 F.3d at 1121 ("A reviewing court's refusal to

consider whether the ALJ's reasoning applies to undiscussed lay witness testimony is contrary not only to our case law holding that errors are harmless if they are 'inconsequential to the ultimate nondisability determination, but also to the long-settled rule that we will not set aside the denial of a disability claim unless 'the Secretary's findings are not supported by substantial evidence *in the record as a whole*").  Under these circumstances, it makes little difference whether the ALJ provides a bad reason for the rejection of the third party statement or no reason at all.

Because the ALJ has already discredited the allegation of functional limitations (by way of rejecting the claimant's direct testimony or statement), he need not do so again with each third party witness making similar allegations.  *Id.* ("where the ALJ rejects a witness's testimony without providing germane reasons, but has already provided germane reasons for rejecting similarly testimony, we cannot reverse the agency merely because the ALJ did not 'clearly link his determination to those reasons'").  Put simply, the lack of harmful error does not arise from the particular rationale (or lack thereof) provided for rejecting the third party statement:  it is the similarity of that statement to the (legitimately rejected) claimant's statements that creates the harmless error.  Remand on these grounds is thus unwarranted.

## VI.   CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision that the Plaintiff is not under a disability as defined by the Social Security Act is supported by substantial evidence in the record as a whole and is based on proper legal standards.  Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.  The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant, Carolyn W. Colvin, and Commissioner of Social Security and against Plaintiff, Melody Holland-Johnson.

IT IS SO ORDERED.

Dated:   **January 25, 2016**          /s/ *Erica P. Grosjean*
                                          UNITED STATES MAGISTRATE JUDGE